UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KATHLEEN GILBREATH, | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-30229-PBS |
| | ) | |
| J.C. PENNEY CORP., INC., | ) | |
| | ) | |
| Defendant | ) | |

REPORT AND RECOMMENDATION WITH REGARD
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Document No.29)
June 4, 2013

NEIMAN, U.S.M.J.

Presently before the court is a motion for summary judgment by J.C. Penney

Corporation ("Defendant") regarding a claim of age discrimination brought by its former

employee, Kathleen Gilbreath ("Plaintiff").  In a one count complaint, Plaintiff has

alleged age discrimination in violation of Mass. Gen. Laws ch. 151B.  Defendant's

motion has been referred to this court for a report and recommendation.  *See* 28 U.S.C.

§ 636(b)(1)(B) and Fed. R. Civ. P. 72(b).  For the reasons which follow, the court will

recommend that the motion be allowed.

I. STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must construe the

facts in a light most favorable to the non-moving party. *Benoit v. Technical Mfg. Corp.*,

331 F.3d 166, 173 (1st Cir. 2003).  Summary judgment is appropriate when "there is no

genuine issue as to any material fact" and "the moving party is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  Thus, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  With regard to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id*.  The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact.  *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

## II.  Factual Background

Before delving into the details of this dispute, a quick summary of the big picture and an introduction of its key players may be of some assistance.  In accord with the standards set forth above, the facts are relayed in a light most favorable to Plaintiff, the non-moving party.

Plaintiff began working at Defendant's Holyoke store on November 9, 2006, as a Commission Associate in the Fine Jewelry Department.  At the time she was hired, Plaintiff was fifty-six years old.  Shortly thereafter, Plaintiff applied for and was offered a promotion as the store's Fine Jewelry Sales Manager.  In that position, Plaintiff oversaw other employees, including Robert Chernick ("Chernick"), a fine jewelry sales associate who had also applied for the manager position.  Plaintiff, in turn, reported to Serena Olsen ("Olsen"), the Holyoke store manager; Michael Proctor ("Proctor") was the Assistant Store Manager who worked directly under Olsen.  Amy Ferrara ("Ferrara")

also worked at the Holyoke store as a pricing signing supervisor, until March 23, 2008, at which time Olsen transferred her to Defendant's Hadley store as a Fine Jewelry Supervisor.  The day after Plaintiff was terminated, on August 13, 2008, Olsen sent Timothy O'Brien, the district manager, an email asking him to consider Ferrara as Plaintiff's replacement.  On August 28, 2008, Ferrara, who was thirty-one at the time, accepted the position.  As Plaintiff sees it, she was terminated for something she did not do so that Olsen could replace her with the younger Ferrara.

This brings us back to the events leading up to Plaintiff's termination.  In March of 2008, Olsen gave Plaintiff her year 2007 performance review.  In it, Plaintiff received an overall rating of "below expectations," in large part, it appears, because sales were down 9.9% as compared to other districts and because her department's 23.1% rate of "care plan" sales fell short of Defendant's goal of 25%.  Care plans cover the warranty and costs for repair or replacement of a given item and, it turns out, are considered an additional sale for fine jewelry merchandise.

In the spring of 2008, shortly after her performance review, Plaintiff was approached by a customer who asked if the store would create a piece of jewelry manufactured by one of Defendant's competitors.  Plaintiff was unsure what Defendant's policy was on this matter and asked Olsen if she could place the order. Olsen testified at her deposition that she recalls responding to Plaintiff's inquiry by telling her to decline the customer's request.  According to Plaintiff, however, Olsen told her that she was also unsure of the store's policy on that issue and directed her to John Vaughn, Plaintiff's field manager.  Plaintiff and Vaughn exchanged emails; he ultimately told her that he did not have information on how she could process the sale and

3

directed her back to Olsen or Proctor.  (See Document No. 35, Ex. 14.)  Plaintiff does

not allege that she approached Olsen a second time; instead, she called one of

Defendant's stores in Rhode Island and spoke with "Linda," the jewelry manager there,

who told her that in the past the store had taken orders for custom jewelry.  At the time,

one of Plaintiff's colleagues, Gail Labonte, also confirmed that Defendant had created

custom jewelry for customers in the past.

At some point after these various discussions, Plaintiff had the jewelry created by

an outside jeweler.  Subsequently, on or around June 9, 2008, Olsen prepared a Policy

Violation Warning stemming from the custom jewelry order, asserting that Plaintiff had

"completely ignored [her] guidance . . . thus showing gross insubordination to her direct

supervisor and this type of behavior will not be tolerated."  (Document No. 35, Ex. 13.)

In the section for associate comments, Plaintiff indicated that it had been her

understanding that Defendant had made custom rings in the past and that, when she

had approached Olsen, she was referred to the field manager for further guidance but

was never told not to place the order.  She also conceded that her decision to go ahead

with the order was bad judgment but explained that her only motivation was to satisfy a

customer.  (Id.)  On the same day she received the warning, Plaintiff signed a Universal

Acknowledgment stating, among other things, that she read and understood a number

of Defendant's policies as they applied to her.  On June 13, 2008, Olsen added an

addendum to the original warning, which stated that any additional insubordination or

failure to follow company policies would result in Plaintiff's immediate termination;

Plaintiff reviewed and signed the addendum on June 17, 2008.

Around the same time - - late spring or early summer of 2008 - - Proctor was at

the store around 8 p.m. and noticed Chernick ringing something up at the register even though no customers were present.  Proctor eventually learned that Chernick had added care plans to a purchase of five watches after the purchaser expressly declined that option.  Proctor alerted Olsen and Jamie Valentin ("Valentin"), the loss prevention manager, about this and Valentin began an investigation.

In the course of the investigation, Valentin interviewed seven of the ten employees of the Fine Jewelry Department.  For his part, Chernick told Valentin that, since 2007, he had been lowering the price of merchandise on his own and then adding care plans that made up the difference in cost - - thereby increasing the number of care plans sold without actually charging the customer for them - - and was also told to do so by Plaintiff early in 2008.  After interviewing six other employees, five told Valentin that Plaintiff never told them to lower the price of merchandise to add care plans, but one other employee, Kathleen Paquette, stated that Plaintiff told her to do anything possible to increase care plan sales, including reducing the price of the merchandise, and that "everyone" in the department manipulated prices.  (See Document No. 32, Ex. B, 56-67.)  Another employee, Patricia Tower, stated that Chernick directed her to lower prices to include care plans and indicated that he had been told to do so by someone from "District."  In Plaintiff's own interview, she stated that she never instructed any sales associates to lower prices to include care plans.  Valentin reported on the results of his investigation to Olsen who, after consulting with Brian Yanus, the Senior Human Resources Manager for Employee Relations, terminated Plaintiff (and Chernick), based on her determination that Plaintiff had instructed her subordinates "to manipulate merchandise prices in order to sell a care plan."  (Document No. 35, Ex. 21.)

5

Importantly for present purposes, at no point during her employment or termination did Plaintiff convey to Olsen that she believed Defendant discriminated against her on the basis of her age.

The day after Plaintiff's termination, Olsen emailed O'Brien for permission to hire Ferrara - - at the time the Fine Jewelry Supervisor at the Hadley store - - as Plaintiff's replacement.  O'Brien was amenable to Olsen's suggestion and, shortly thereafter, Ferrara accepted the position.

III. DISCUSSION

In the absence of direct evidence of discrimination, of which there is none here, both Massachusetts and federal age discrimination claims are governed by the three-step *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973); *Wheelock College v. Massachusetts Commission Against Discrimination*, 355 N.E.2d 309, 313-14 (Mass. 1976).  Under that framework a plaintiff must first demonstrate a *prima facie* case of age discrimination.  To do this under Massachusetts law, the only claim made in the case at bar, the plaintiff must show (1) she was over forty years old at the time of the adverse action; (2) she was subjected to such an action, such as a termination; (3) she was performing her job at a level that met the defendant's legitimate expectations; and (4) following her termination, she was replaced by someone at least five years younger.  *Knight v. Avon Products, Inc.*, 780 N.E.2d 1255, 1262, 1264 (Mass. 2003).  If the plaintiff can satisfy this initial burden, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  If the defendant meets that burden, the burden of production shifts back to the plaintiff to

6

demonstrate that the defendant's articulated reason was pretextual.  *Id.*  Although the burden of production shifts back and forth, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

Here, the parties essentially agree that Plaintiff has met her initial burden of establishing a *prima face* case, in that she (1) was over forty and a member of the protected class, (2) had performed her job at an acceptable level, (3) was terminated, and (4) was replaced by an individual more than five years younger.  Although the parties quibble over whether Ferrara, Plaintiff's replacement, was less qualified than she, Plaintiff, in the court's opinion, has met her burden of demonstrating that Ferrara was "similarly or less qualified" given the parties' agreement that Ferrara was more than five years younger than Plaintiff and had fewer years of experience  *See Knight*, 780 N.E.2d at 1262.

Like Plaintiff's burden at the *prima facie* step, Defendant's burden at the second step of the burden-shifting framework is relatively light.  *See Matthews v. Ocean Spray Cranberries, Inc.*, 686 N.E.2d 1303, 1309 (Mass. 1997); *see also Ruiz v. Posadas de San Juan Associates*, 124 F.3d 243, 249 (1st Cir. 1997).  Here, Defendant has presented the findings of the Valentin investigation, in which two employees stated that Plaintiff told them to adjust prices to include care plans, in direct violation of company policy, as their nondiscriminatory reason for her termination.  Thus, in the court's view, Defendant has met its burden at the second step.

Defendant having met that burden, the ball, so to speak, is back in Plaintiff's

7

court.  At this third stage, "the employee must show that the basis of the employer's decision was unlawful discrimination."  *Abramian v. President & Fellows of Harvard College*, 731 N.E.2d 1075, 1085 (Mass. 2000).  In the absence of direct evidence of age discrimination - - and there is none here - -  it would be enough for Plaintiff to provide "proof that [Defendant] has advanced a false reason for the adverse employment decision" and, from that, "to infer discriminatory animus and causation."  *Knight*, 780 N.E.2d at 1263 (citing *Lipchitz v. Raytheon Co.*, 751 N.E.2d 360 (Mass. 2001)).[1]

In support of her argument that its reason for her termination was false, Plaintiff argues that Defendant planned to replace her with Ferrara prior to the investigation, that the investigation itself was a "sham" and that, as such, Olson's reliance on it was unreasonable.  Plaintiff further theorizes that Chernick and the other employee had reason not only to dislike her but to avoid taking responsibility for their actions, and that Olsen and the investigator failed to take that into consideration.  Plaintiff also points to other employees who reported that she never told them to adjust prices to increase sales plans.  In combination, Plaintiff concludes, these facts are enough to establish that Defendant's reason for firing her was false and, by inference, pretextual.

---

[1] This state standard stands in some contrast to claims of age discrimination under federal law where, as the First Circuit has explained, "[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination." *Melendez v. Autogermana, Inc.,* 622 F.3d 46, 52 (1st Cir. 2010) (internal quotation marks omitted).  Under Massachusetts law, by contrast, a plaintiff employee need only demonstrate "that one or more of the employer's reasons is false," which showing, "combined with the evidence adduced to meet the employee's burden of proof under the first stage of *McDonnell Douglas*," permits (but does not require) the jury to "infer that the employer is covering up a discriminatory intent, motive or state of mind."  *Lipchitz*, 751 N.E.2d at 368.

Unfortunately for Plaintiff's cause, her disagreement with Defendant's assessment of the evidence produced by the investigation is not the equivalent of establishing that Defendant has "advanced a false reason" for her termination.  To be sure, a plaintiff may survive summary judgment absent evidence of discriminatory intent if she can establish that "the reasons advanced by the employer for making the adverse decision are not true," but it is not enough to argue that the decision itself was not "fair or wise" as long as it was "the real reason for its action."  *Joyal v. Hasbro, Inc.*, 380 F.3d 14, 19 (1st Cir. 2004) (quoting *Wheelock College* 355 N.E.2d at 315).  Here, however, Plaintiff does not dispute that the incident with Chernick took place or that he and one other employee told the investigator that she instructed them to adjust merchandise prices in violation of company policy.  Nor does Plaintiff even allege that Defendant itself somehow influenced or made up out of whole cloth the evidence revealed in the investigation.

Thus, Plaintiff's claim boils down to a disagreement with Defendant's business decision to believe other employees instead of her.  While, in Plaintiff's opinion, this may demonstrate bad judgment on Defendant's part, that judgment in and of itself does not run afoul of the law.  In essence, what Plaintiff has failed to do at this stage of the litigation, after all discovery has been completed, is set forth sufficient evidence which at least suggests, let alone demonstrates, that Defendant did not believe that she violated company policy or that it was not the actual reason for her termination.  *See Bennett v. Saint-Gobain Corp.*, 453 F.Supp.2d 314, 327 (D. Mass. 2006) ("[T]he inquiry is not whether the plaintiff's version of events is true, but whether the decision-maker reasonably believed that the plaintiff had engaged in misconduct.") (citing *Ronda-Perez*

*v. Banco Bilbao Vizcaya Argentaria-Puerto Rico.*, 404 F.3d 42, 45 (1st Cir. 2005)).  In short, even considering the facts in a light most favorable to Plaintiff, the court is unable to conclude that Defendant has advanced a false reason for her termination or to "infer discriminatory animus and causation" from the reason given.  *Knigh*t, 780 N.E.2d 1263.

IV.  CONCLUSION

Accordingly, the court recommends that Defendant's motion for summary judgment be allowed.[2]


DATED: June 4, 2013

 /s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

[2]  The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.